UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ZOGENIX, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 20-cv-06578-YGR (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 54, 64-3 |

Now pending before the court are a pair of jointly filed letter briefs setting forth each Party's request to compel certain discovery. On August 4, 2021, the Parties initially filed a 7-page letter brief coupled with 23 pages of exhibits. *See* Ltr. Br. (dkt. 54). Thereafter, on August 11, 2021, the Honorable Yvonne Gonzalez Rogers referred the resolution of discovery disputes in this case to the undersigned. *See* Order (dkt. 55). A discovery hearing was held on August 18, 2021 (dkt. 57); in the course of which, the undersigned rendered a series of preliminary rulings granting Defendant's motion to compel and denying Plaintiff's motion to compel (Plaintiff's request for reinsurance information was denied as irrelevant, its request for drafting histories was granted only to the extent that Defendant would produce a specific verified response, and its request regarding Defendant's position with respect to other insured entities was denied on both relevance and undue burden and proportionality grounds). *See* Tr. (dkt. 60) at 48-49. Plaintiff's counsel then expressed dissatisfaction with his opportunity to make an adequate record as such: "I mean, we had two pages to address a whole swath of requests." *Id*. at 50. Consequently, the undersigned permitted the Parties to file a supplemental letter brief without any page limitations whatsoever, setting forth each and every disputed item of discovery with each Party's arguments about why – or why not –

the production of that item should be compelled. *See* Order (dkt. 59). Shortly thereafter, the Parties filed a 30-page letter brief (single spaced, and attended with approximately 60 pages of exhibits) setting forth their positions regarding 16 disputed items. *See* Supp. Ltr. Br. (dkt. 64-3) at 1-99. For the reasons stated below, the court will now convert each of its preliminary rulings in to final rulings as memorialized herein.

**BACKGROUND**

Plaintiff has manufactured, marketed, and sold hydrocodone bititrate, an opioid medication; as a result of this, Plaintiff has been sued by various entities, in various courts, seeking to hold Plaintiff liable for actions and omissions that allegedly contributed to the national opioid crisis (to wit, the fact that a large number of consumers became addicted to these medications). *See generally* Compl. (dkt. 1) at 5-7. Plaintiff had purchased a series of insurance policies, under which it expected to be defended in such underlying actions, and when Defendant refused, Plaintiff initiated the instant lawsuit. *Id*. at 5-9. Through this lawsuit, Plaintiff contends: (A) that Defendant "has breached its obligations under the Policies by refusing to timely and fully defendant Plaintiff against the claims asserted" in the underlying lawsuits – that is, a breach of the contractual duty to defend; (B) that it is entitled to declaratory relief based on Defendant's alleged breach of its duties to defend Plaintiff in the underlying lawsuits pursuant to two of the insurance policies in question; and, (C) that Defendant has breached the contractual covenant of good faith and fair dealing "by engaging in unreasonable conduct, including . . . improperly giv[ing] greater weight to its own interest in avoiding its defense obligation than it accorded to Plaintiff's interest in a prompt and complete defense" regarding the underlying actions. *Id*. at 9-12. Accordingly, this lawsuit boils down to two declaratory causes of action, and two causes of action for breach of contractual duties and covenants.

Through its portion of the Joint Case Management Statement filed on January 15, 2021, Plaintiff suggested that the discovery process in this case should be either bifurcated or phased in such a manner as to allow "[a] motion for summary judgment by Zogenix or coordinated party cross-motions on this [single] legal issue [to wit, the issue of Federal's alleged duty to defend under the CGL or Products Policies] . . . after limited targeted discovery, which would have the

2

1  benefit of narrowing the issues for all remaining discovery, streamline the presentation of evidence
2  in subsequent motions and at trial, and provide early guidance to the Parties on the contractual
3  obligations under the Policies that may facilitate informal resolution." *See* Joint Case Mgmt.
4  Statement (dkt. 36) at 4. Plaintiff's suggestion was rejected by Judge Gonzalez Rogers in that the
5  court's ensuing Case Management and Pretrial Order (dkt. 41) set forth a single cutoff date for fact
6  discovery (October 22, 2021), and a single due date for summary judgment motions (December
7  14, 2021). *Id*. at 1. Knowing this, and without having ever having moved Judge Gonzalez Rogers
8  for a stay of the entire case, or a stay of some fraction of the discovery, or an extension of the
9  rapidly approaching discovery cutoff date, Plaintiff's opposition to Defendant's motion to compel
10 discovery now asks a referral judge to essentially upend a case schedule established by the
11 presiding judge by imposing an indefinite discovery stay when doing so would clearly trespass
12 into the presiding judge's prerogative. Indeed, Plaintiff's request is even further undermined by
13 the fact Plaintiff's previously-proposed approach to bifurcating or phasing the discovery process
14 in this case has already been rejected by the presiding judge.

## DISCUSSION

16 To borrow Defendant's phrasing, the essence of Plaintiff's resistance to providing
17 discovery in this case is embodied in Plaintiff's assertion that it gets "to pick and choose what it
18 must produce in discovery while pressing forward with its claims" against Defendant. *See* Supp.
19 Ltr. Br. (dkt. 64-3) at 5. In support of this approach, Plaintiff principally relies on two state court
20 cases – whose holdings are more procedural than substantive – which the undersigned finds to be
21 inapplicable in the present context for a number of reasons. In this regard, Plaintiff relies in part on
22 *Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287 (1993). However, the undersigned
23 finds that reliance on that citation does not compel the results urged by Plaintiff. The *Montrose*
24 *Chemical* litigation focused on procedural, rather than substantive, matters. From the late 1940s to
25 the early 1980s, Montrose Chemical Corporation of California manufactured the insecticide
26 dichlorodiphenyltrichloroethane (commonly referred to as "DDT"), as a result of which, it was
27 named as a defendant in several private and governmental environmental contamination actions;
28 its insurers largely agreed to defend it in those actions, but subject to a reservations of rights. *See*

3

*Montrose Chem. Corp. v. Superior Court (Canadian Universal Ins. Co.)*, 25 Cal. App. 4th 902, 905 (1994). In 1986, Montrose became concerned about its insurers' reservation of rights and decided to sue its carriers for a declaration of its rights to (1) a defense and (2) indemnity in the contamination actions. *Id*. The appellate issues in that litigation eventually morphed into the question of whether the declaratory action against the insurers could be set for trial before the third party suits were resolved; in which regard the *Montrose-II* court held that, "on the record before us, we cannot say one way or the other, and we therefore return the ball to the trial court, with directions to determine the status of the underlying lawsuits and the scope of the carriers' defenses, and then decide whether it is appropriate to set this case for trial." *Id*. In a previous round of appeals in the same case (relied upon here by Plaintiff), the *Montrose-I* court noted what is clearly a procedural ruling by stating that: "[t]o eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action." *See Montrose Chem. Corp.*, 6 Cal. 4th 287, 301 (1993). Plaintiff's reliance on the *Montrose Chemical* line of cases and their progeny (including *Riddell, Inc. v. Superior Court*, 14 Cal. App. 5th 755, 767 (2017) ("The upshot of these legal principles [in ruling on certain discovery disputes] is that an insurer cannot, over the insured's objection, use a declaratory relief action as a forum to litigate factual issues affecting the insured's liability in the underlying action."), and *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 976 (1995)) are misplaced for a number of reasons. First, those holdings are procedural rather than substantive in nature, and it is well established that under the doctrine of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996). And, while it can sometimes be said that "[t]he line between procedural and substantive law is hazy[,] no one doubts federal power over procedure." *Erie R.R.*, 304 U.S. at 92 (citing *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 22-23 (1825) (Marshall, C.J.)) ("The 17th section [of the Judiciary Act 1789] authorizes the Courts 'to make all necessary rules for the orderly conducting business in the said Courts . . ."). Thus, the undersigned rejects Plaintiff's effort to convince this court to adopt state procedural rulings that, as

4

mentioned below, would have no application in the distinguishable context of this breach of contract case even if they were applied. Second, even in a hypothetical context where federal courts would be willing to abandon federal procedural rules in favor of state procedural rulings, the *Montrose* line of cases contemplate staying an entire declaratory action against the insurer while awaiting the outcome of the underlying cases; however, nowhere in those cases does any holding countenance hamstringing an insurer's ability to defend itself in an active <u>breach of contract lawsuit</u> (as opposed to a mere declaratory action) while giving the insured free reign to run roughshod over a now-defenseless insurer as Plaintiff seems to suggest. Third, as stated above, the undersigned is neither empowered, nor otherwise willing, to enter orders that would effectively modify or nullify prior orders entered by the presiding judge in this case. Therefore, Plaintiff's request that the undersigned "stay" the discovery that Defendant seeks while compelling the production of discovery sought by Plaintiff – aside from it being manifestly unfair – essentially seeks an order from the undersigned that would cancel or nullify the discovery cutoff date already established by Judge Gonzalez Rogers, not to mention that it would constitute an effective reversal of a decision by the presiding judge to rejected Plaintiff's request to bifurcate or phase the discovery process in this case.

Plaintiff asserts "four types of prejudice that the [supposed] bar on liability-related discovery is designed to avoid," however, the undersigned finds that each of those assertions is unpersuasive. First, Plaintiff suggests that permitting discovery about Plaintiff's prior knowledge about the harms associated with its product (which is relevant to a particular contract provision involved between these Parties and which is determinative of Defendant's obligation to defend Plaintiff in the underlying actions) would have the effect of causing Defendant to "align[] itself with the underlying plaintiffs . . . [and] might lead the underlying plaintiffs down paths that they never even considered." *See* Spp. Ltr. Br. (dkt. 64.3) at 8. Plaintiff also suggests that "[w]hen an insured is forced to respond to liability-related discovery in a duty-to-defend action, it is thrust into a two-front war with the underlying plaintiffs and its own liability insurer." *Id*. These complaints ring hollow. First, Plaintiff "opened" the second front itself when it decided to sue its insurer and allege two breach of contract claims in addition to declaratory causes of action. Having

opened the second front itself by suing Defendant in this court, it seems disingenuous to complain about having to fight on two fronts simultaneously. Second, if Defendant's interest appears to come into alignment with those of the plaintiffs in the underlying lawsuits due to the fact that there is a disagreement between Plaintiff and its insurer about whether or not the contract provisions that bind them implicate a duty to defend Plaintiff in the underlying actions, then so be it. As the saying goes, it is what it is. Such an appearance, or even an actual alignment of these interests, if such is even the case, is at least in equal measures a product of Plaintiff's own choice to bring this breach of contract suit and declaratory action at this time and in this manner against its insurer, while failing to seek a stay of this action pending the resolution of the underlying cases. At bottom, the undersigned finds that if Plaintiff is in fact faced with any such prejudice, it is due to its own choices, and that precluding Defendant from a fair shot at defending this action is no solution at all. Similarly, Plaintiff complains about one-way collateral estoppel stemming from the notion that "[i]f Federal is permitted to litigate Zogenix's alleged knowledge and conduct in this coverage action, any finding adverse to Zogenix will be asserted as collateral estoppel by plaintiffs in the underlying [] lawsuits." *Id*. Plaintiff also contends that its "costs of responding to discovery in a duty-to-defend action are recoverable only if there is a finding of bad faith." *Id*. at 9. Likewise, these two assertions are also unpersuasive because they are problems of Plaintiff's own making, in that they are the vicissitudes of choosing to maintain an active lawsuit against an insurer for breach of a contract obligation to defend underlying actions <u>during</u> the pendency of those underlying actions; and, the undersigned rejects the notion that the solution to these problems is to deny Defendant the discovery it needs to defend itself in this action.

   In short, Plaintiff cannot be permitted to use its lawsuit against Defendant as both a sword and a shield. If Plaintiff's concerns were genuine, Plaintiff would have sought a stay of the entire lawsuit from the presiding judge, and having failed to do so, Plaintiff cannot convincingly suggest that this court should strip Defendant of any ability to fairly and fully defend itself. To the extent that some or all of Plaintiffs concerns can be addressed with a stipulated protective order (including provisions for AEO designations) the undersigned encourages the Parties to propose such an order. In any event, for all of these reasons, as it pertains to Dispute #1 (Plaintiff's request

6

1   that only the discovery sought by Defendant that is related to liability in the underlying litigation
2   be "stayed"), the undersigned holds that Plaintiff's objections to producing discovery under the
3   *Montrose* line of cases are **OVERRULED**; and Plaintiff's request for a "stay" of the discovery
4   sought by Defendants based on that line of cases is **DENIED**.

5   Accordingly, for the reasons stated above, in addition to those articulated at the hearing
6   (*see* TR. (dkt. 60)), as well as for the reasons enumerated in Defendant's arguments (*see* Supp. Ltr.
7   Br. (dkt. 64-3) at 12-25), Plaintiff's objections to producing the discovery outlined in Dispute #2
8   through Dispute #12 (which are generally repetitive assertions of prejudice under the *Montrose*
9   line of cases) are **OVERRULED**, and Defendant's requests to compel the materials described in
10  Dispute #2 through Dispute #13 are **GRANTED**. Plaintiff is **ORDERED** to tender this discovery
11  forthwith.

12  Dispute #13 does not appear to constitute a currently justiciable dispute in light of the
13  above-recited holdings and orders. *See id*. at 25-26. In this regard, the Parties have agreed to add
14  an AEO provision and certain other modifications to a stipulated protective order which they
15  intend to submit within a week. *Id*. at 25. The only "dispute" here is the reiteration of Plaintiff's
16  objection to the effect that Plaintiff does not believe that such a protective order will address its
17  objections "on *Montrose* grounds." *Id*. Plaintiff, therefore, reiterates that "a stay / bar of all
18  liability-related discovery is still proper, and all of Federal's pending discovery that seeks
19  documents and information related to Zogenix's alleged liability should be denied." *Id*. at 26.
20  Given the fact that Plaintiff's objections have been overruled, Dispute #13 (which the undersigned
21  construes as a nothing more than a reiteration of those objections) is **DENIED as moot**.

22  As to the discovery that Plaintiff seeks to compel, Dispute #1 seeks documents and
23  communications between Defendants any its reinsurers and or retrocessionaries relating to
24  Plaintiff, the insurance policies involved in this case, and / or the underlying actions. *Id*. at 26-28.
25  For the reasons stated at the hearing (*see* Tr. (dtk. 60) at 49), as well as for the reasons stated by
26  Defendant (*see* Supp. Ltr. Br. (dkt. 64-3) at 27), Plaintiff's request to compel the material
27  described in Dispute #1 is **DENIED** as irrelevant, overly broad, and disproportional to the needs
28  of this case.

The material Plaintiff seeks to compel in Dispute #2 consists of three separate requests for production (RFP Nos. 11 to 13). RFP No. 11 seeks documents and communications relating to the drafting history, meaning, construction, interpretation, and / or application of the insuring clause contained in the policies involved in this case, including Defendant's view of the scope and or intent of the coverage for amounts paid as damages for bodily injury and property damaged caused by an "occurrence." *Id*. at 28. RFP No. 12 seeks documents and communications relating to the drafting history, meaning, construction, interpretation, and / or application of the products-completed operations exclusion contained in any of the policies involved in this case, including Defendant's view of the scope and / or intent of the products-completed operations exclusion. *Id*. RFP No. 13 seeks documents and communications relating to the drafting history, meaning, construction, interpretation, and / or application of any other exclusion(s) or provision(s) on which Defendant is relying in denying coverage. *Id*.

Plaintiff's only explanation for why this material should be compelled is tenuous at best, if not an outright fishing expedition. Plaintiff submits that "[u]nder California law, because extrinsic evidence of ambiguities may be established through parol evidence, and all ambiguities are resolved in favor of coverage, courts permit the discovery and use of policy drafting histories *as this may disclose ambiguities or otherwise shed light on interpretations that favor the insured*." *Id*. at 29. However, Plaintiff has identified no such ambiguities; instead, Plaintiff simply wishes to put Defendant through the burden to pouring through the entirety of its files and records pertaining to all of its documents and communications in the mere hope that this fishing expedition "may disclose ambiguities."

Meanwhile, Defendant submits, as to RFP Nos. 11 and 12, that "it does not have any sort of repository for 'drafting history,' and that asking for any document ever generated involving any policy in which the 'meaning, construction, interpretation, and / or application' of a policy term was discussed would effectively require Defendant "to review most every document ever generated involving any CGL policy – an impossible task and one that has no possible relation to the narrow coverage question posed by this lawsuit." *Id*. at 29. Accordingly, Defendant proposes "to provide a verified response that it is not aware of any 'drafting history' documents in response

8

to RFP#11 and #12." *Id*. Further, as to RFP No. 13, Defendant submits that it is even more vague and impermissibly broad in that it "does not even specify which policy terms Zogenix is asking about, and would require Federal to explore potentially scores of other policy terms (e.g., cooperation clause, retentions, etc.) due to the vagueness and breadth of the request." *Id*. The undersigned agrees with Defendant. Consequently, Defendant is **DIRECTED** to provide a verified response that it is not aware of any drafting history documents that would be responsive to RFP Nos. 11 and 12. Further, the undersigned finds that RFP No. 13 is both impermissibly vague and broad. In short, because the undersigned finds that Plaintiff has failed to establish relevance for the materials encompassed in Dispute #2, and because each of those requests are little more than a fishing expedition which would require immense amounts of time, cost, and effort on Defendant's part, the undersigned finds that (aside from the failure to establish relevance) RFP Nos. 11 through 13 seek information that is grossly disproportional to the needs of the case. Accordingly, Plaintiff's request to compel the production of this material is **DENIED**.

Lastly, in Dispute #3, Plaintiff seeks to compel Defendant to search for, arrange, and produce "information regarding Federal's handling of other insureds' requests for a defense of opioid-related claims." *Id*. Defendant submits that "[t]he request calls for Federal and its counsel to pull and review every single [of such] claim file[s], and to locate those [responsive] documents in each file. This process would take tens of thousands of hours and cost hundreds of thousands of dollars – and would achieve nothing." *Id*. at 29-30. Plaintiff ventures to establish the relevance of this request by implicitly conceding that while it does not know what quantity and quality of evidence this search will yield, Plaintiff hangs its hopes on the notion that *if* the evidence shows that Defendant has denied all of the opioid coverage claims it received, this "would be suggestive of bad faith, and therefore relevant to a claim for punitive damages." *Id*. at 30. Further, Plaintiff also submits – in a similarly vague and indeterminate fashion – that "[o]ther evidence could demonstrate a pattern of denials, or show that Zogenix is being treated differently than Federal's other insureds – also indicating bad faith." *Id*. Plaintiff's own phrasing clearly demonstrates that the material it seeks here is another fishing expedition – demonstrating a tenuous, ill-defined, and obscure link of relevancy, at best. Meanwhile, Defendant has convincingly outlined the

9

tremendous burden encompassed in this request. Accordingly, because the burden grossly outweighs the relevance of this information (if the search even yields any information that would be actually relevant to any degree at all), the undersigned finds that this request is likewise not proportional to the needs of this case, and so Plaintiff's request to compel the material described in Dispute #3 is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 3, 2021.

ROBERT M. ILLMAN
United States Magistrate Judge